**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HEALTHNOW NEW YORK INC. d/b/a/**
**BLUECROSS AND BLUESHIELD OF**
**WESTERN NEW YORK and BLUESHIELD**
**OF NORTHEASTERN NEW YORK,**

                      **Plaintiff,**

                      v.                                                   1:05-CV-612
                                                                           (FJS/RFT)

**APS HEALTHCARE BETHESDA, INC.**
**and METROPOLITAN IPA, INC.,**

                      **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **MANATT PHELPS & PHILLIPS, LLP**<br>7 Times Square<br>New York, New York 10036<br>Attorneys for Plaintiff | **JAMES W. LYTLE, ESQ.**<br>**SHAWN M. FRIEDMAN, ESQ.**<br>**RONALD G. BLUM, ESQ.** |
| **KATTEN MUCHEN ROSENMAN, LLP**<br>525 West Monroe Street, Suite 1600<br>Chicago, Illinois 60661<br>Attorneys for Defendants | **ALYX S. PATTISON, ESQ.**<br>**BONITA L. STONE, ESQ.**<br>**JASON P. SHAFFER, ESQ.**<br>**NICOLE N. AUERBACH, ESQ.** |
| **O'CONNELL & ARONOWITZ**<br>54 State Street, 9th Floor<br>Albany, New York 12207<br>Attorneys for Defendants | **JAMES A. SHANNON, ESQ.**<br>**JEFFREY J. SHERRIN, ESQ.** |

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION[1]

Plaintiff HealthNow, New York, Inc. ("HealthNow"), commenced this action against Defendants APS Healthcare Besthesda, Inc. and Metropolitan IPA, Inc. (collectively "APS") asserting (1) a breach of contract claim and (2) a claim for a declaratory judgment and specific performance. Defendant APS asserts counterclaims against Plaintiff HealthNow for (1) negligent misrepresentation, (2) fraud, and (3) promissory estoppel.[2]

Currently before the Court is HealthNow's motion to dismiss APS's counterclaims for (1) negligent misrepresentation, (2) fraud, and (3) promissory estoppel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### II. BACKGROUND[3]

HealthNow is a New York corporation that is licensed in New York as a not-for-profit health insurer and a health maintenance organization. Defendant APS Healthcare Bethesda, Inc. is an Iowa corporation with its principal place of business in Silver Spring, Maryland. APS is

---

[1] The parties stipulated and agreed to the voluntary dismissal of HealthNow's breach of the covenant of good faith and fair dealing claim. *See* Dkt. No. 14.

[2] The parties agree that New York State law applies to their claims.

[3] Since HealthNow moved under Rule 12(b)(6) to dismiss APS's counterclaims, the Court must accept APS's factual allegations as true for purposes of this motion. *See Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 330 (S.D.N.Y. 2005) (citations omitted). The Court has therefore derived the factual background largely from APS's pleadings.

-2-

registered in New York to perform utilization review on behalf of HMOs and insurers. Defendant Metropolitan IPA, Inc. ("IPA"), a corporate affiliate of APS, is a Maryland corporation with its principal place of business in Silver Spring, Maryland. IPA arranges for mental health and chemical dependency services to persons with third-party health care coverage plans through service providers.

Toward the end of summer 2001, HealthNow needed to replace its third-party mental health and chemical dependency service provider, Integra. On August 24, 2001, HealthNow provided APS with data so that APS could formulate its price proposals as a possible replacement for Integra. HealthNow then provided APS with additional information, specifically, its former pricing fee schedule with its previous mental health service provider, Integra.

On May 31, 2002, HealthNow and APS entered into an IPA Agreement ("the Agreement") that set forth the terms under which APS was to arrange for the provision of mental health and chemical dependency services to HealthNow's members and the manner in which HealthNow was to pay for those services.

Sometime after the Agreement was executed, APS noticed that HealthNow's data and representations were inaccurate.[4] HealthNow acknowledged that some of the information that it had provided was inaccurate or misclassifed. Sometime thereafter, HealthNow drafted a Revised and Restated IPA Agreement ("Revised Agreement") to reflect changes made to the

---

[4] APS's pleadings do not indicate the specific date on which it discovered that HealthNow's data and representations were inaccurate.

original Agreement.[5]

APS's President of Behavioral Health Services, Roderick Hafer, signed the Revised Agreement on June 16, 2004, but stated, under separate cover, that he was only doing so based on his understanding that an amendment would be prepared memorializing the Revised Agreement's terms as currently negotiated. On July 9, 2004, however, after HealthNow and APS were still unable to resolve certain issues that were integral to the parties' Revised Agreement, APS sent HealthNow a letter containing its final proposal to resolve damages that APS incurred as a result of HealthNow's inaccurate information. The letter informed HealthNow that, if it did not respond by July 14, 2004, APS would terminate their contractual relationship. HealthNow never responded. APS terminated the relationship on October 15, 2004. As a result, HealthNow brought this action against APS for (1) breach of contract and (2) declaratory judgment and specific performance. In a separate answer and counterclaim, APS asserted claims against HealthNow for (1) negligent misrepresentation, (2) fraud, and (3) promissory estoppel.

### III. DISCUSSION

**A.    Standard of Review**

As a threshold matter, Rule 12(b)(6) applies to both claims and counterclaims with equal force; therefore, courts review counterclaims under the same standard as claims in a plaintiff's complaint. *See Pyke v. Laughing,* No. 92-CV-555, 1996 WL 252660, *2 (N.D.N.Y May 9, 1996) (citing *Cohen v. Stephen Wise Free Synagogue*, 95 Civ. 1659, 1996 WL 159096, at *1 (S.D.N.Y.

---

[5] APS's pleadings do not indicate the specific date on which HealthNow drafted the Revised Agreement.

April 4, 1996)).  Under Rule 12(b)(6), "a court must accept the material facts alleged in the complaint as true" and consider those facts in the light most favorable to the plaintiff.  *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 330 (S.D.N.Y. 2005) (citing *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998)) (other citation omitted).  "[U]nless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief,'" a court should not dismiss a complaint for failure to state a claim.  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Applying this standard, the Court will address each of APS's counterclaims in turn.

### B. Negligent Misrepresentation

Under New York law, to state a claim for negligent misrepresentation,

> a plaintiff must prove that: (1) defendant, as a result of a special relationship, failed to give correct information; (2) defendant should have known that the false representation was incorrect; (3) defendant knew the information was to be used by plaintiff for a serious purpose; (4) plaintiff intended to rely and act upon it; and (5) plaintiff reasonably relied on the information to his or her detriment.

*Calcutti v. SBU., Inc.,* 223 F. Supp. 2d 517, 522 (S.D.N.Y. 2002) (citing *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).

In determining whether a special relationship exists in the commercial context, the New York Court of Appeals has instructed that

> a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that

-5-

purpose.[6]

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996).

HealthNow argues that the Court should dismiss APS's negligent misrepresentation claim because APS fails to allege that it had a special relationship with HealthNow other than an arm's length business transaction. As a result, HealthNow contends that APS cannot state a claim for negligent misrepresentation.

APS, conversely, contends that it did, in fact, have a special relationship with HealthNow based on HealthNow's unique expertise and proprietary grip on information that it provided to APS. APS, therefore, contends that HealthNow "knew or should have known that APS would rely upon [the data's] accuracy and comprehensiveness in formulating its pricing proposals and ultimately agreeing on pricing amounts for the HealthNow business." *See* APS's Counterclaim at ¶ 53.[7]

APS alleges that HealthNow had a "unique or special expertise" regarding the information that it provided to APS and upon which APS relied because that information was only available from HealthNow.[8] *Kimmell*, 89 N.Y. 2d at 264. Moreover, APS alleges that had it

---

[6] With respect to finding a duty, the New York Court of Appeals has held that "[a]lthough the existence of a duty is an issue of law for the courts . . . once the nature of the duty has been determined as a matter of law, whether a particular defendant owes a duty to a particular plaintiff is a question of fact." *Kimmell*, 89 N.Y.2d at 263 (internal citation omitted).

[7] Defendant APS filed its "Answer and Affirmative Defenses to Complaint" and "Counterclaim" as two separate documents but under the same docket number. *See* Dkt. No. 3.

[8] HealthNow relies on *JP Morgan Chase Bank v. Winnick* for the proposition that a "party's particular knowledge about its own business 'does not constitute the type of "specialized knowledge" that is required in order to impose a duty of care in the commercial context.'" *See*

(continued...)

"known that the data and representations it was relying upon from HealthNow had glaring material omissions and was *[sic]* inaccurate, it would not have entered into the Agreements with HealthNow at the rates it did." *See* APS's Counterclaim at ¶ 56. APS further alleges that, since HealthNow made these representations in the course of the parties' contractual negotiations and APS entered the contract based on that information, HealthNow was likely "aware of the use to which the information would be put and supplied it for that purpose."[9] *Kimmell*, 89 N.Y. 2d at

---

[8](...continued)
HealthNow's Reply Memorandum of Law at 2 (quoting *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004)). The *Winnick* case is distinguishable from this case in two material respects.

First, the *Winnick* plaintiff, a lending bank, argued that the defendant, a borrowing technologies company, possessed superior and expert knowledge regarding the particulars of its financial condition and technical capabilities. The court held that this situation did not constitute the type of specialized knowledge that creates a duty of care because the defendant's superior knowledge of its financial condition and capabilities did not dispense with the plaintiff-bank's commercial obligation to use the "sophisticated means of assessing those risks that cut across industries and areas of technical expertise." *Winnick*, 350 F. Supp. 2d at 402. If this constituted specialized knowledge in the commercial context, the court opined, then every bank would have a claim against every borrower who acted negligently in a commercial loan transaction. The court reasoned that such a result would be inconsistent with banking practices, in which a bank must assess lending risks posed by potential borrowers. Unlike the sophisticated banking practices that drove the result in *Winnick*, APS, a healthcare service provider, had no means to assess the information that HealthNow provided because, as APS alleges, that information was proprietary to HealthNow. HealthNow has not disputed this characterization.

Second, the *Winnick* court noted that it found no duty of care outside the contract because the plaintiff-bank "failed to allege either a relationship [or a duty of care] that is in any way distinct from" the borrowing agreement. *Id.* at 404. In contrast, as noted above, APS's allegations are sufficeint to raise factual issues about whether or not a special relationship existed between it and HealthNow.

[9] Moreover, the New York Court of Appeals has held that "[i]n the commercial context, a duty to speak with care exists when 'the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information . . . .'" *Kimmell*, 89 N.Y.2d at 263 (quotation omitted).

-7-

264. APS's counterclaim, therefore, alleges sufficient facts which, if true, would support a claim for negligent misrepresentation generally and whether a special relationship existed between the parties specifically.[10]

Accordingly, the Court denies HeathNow's motion to dismiss APS's negligent misrepresentation counterclaim.

## C.    Fraud

### *1. Fraud's Elements and the Revised Agreement's Integration Clause*

To state a claim for common law fraud in New York, "a plaintiff must allege: (1) a material false representation made by the defendant; (2) with the intent to defraud; (3) upon which the plaintiff reasonably relied; (4) causing the plaintiff damage as a result of his reliance." *Doehla v. Wathne Ltd., Inc.*, No. 98 Civ. 6087, 1999 WL 566311, *9 (S.D.N.Y. Aug. 3, 1999) (citing *Swersky v. Dreyer and Traub*, 643 N.Y.S.2d 33, 36 (1st Dep't 1996)). However,

---

[10] HealthNow relies on *LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate Inc.* for the proposition that there is no special relationship or duty arising out of a seller's unique knowledge or access to information. *See* No. 02 Civ. 7868, 2003 WL 1461483, *3-*4 (S.D.N.Y. Mar. 21, 2003). The *LaSalle* case dealt with a motion to dismiss a negligent misrepresentation claim that the plaintiff had asserted along side a breach of contract claim. In finding that the parties did not have a special relationship, the court relied on two cases "where claims for negligent misrepresentation and breach of contract apparently have co-existed[.]" 2003 WL 1461483, at *3. Analyzing those two cases in conjunction with the facts of *LaSalle*, the court found that in all three instances there was no special relationship because there was no independent duty extraneous to the contractual terms. *See id.* In this case, conversely, APS has not asserted a breach of contract claim along side its negligent misrepresentation claim. The existence of these two claims in the same action was a controlling factor in the *LaSalle* decision because the court was concerned about "the problem of invoking tort law for claims that sound in contract . . . ." *Id.* at *4 (citations omitted). Furthermore, unlike *LaSalle*, this case has sufficient factual issues relating to HealthNow's special knowledge, by way of its proprietary information, and its awareness of APS's reliance on this information, that raise a dispute as to whether or not a special relationship did, in fact, exist.

> for a fraud claim to survive *alongside* a breach of contract claim the plaintiff must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, No. 02 Civ. 1312, 2002 WL 31426310, *5 (S.D.N.Y. Oct. 29, 2002) (emphasis added) (quoting [*Bridgestone/Firestone*, 98 F.3d] at 20) (other citation omitted).[11]

HealthNow argues that APS cannot maintain its fraud counterclaim because it cannot show that it justifiably relied on HealthNow's representations, that HealthNow had a legal duty separate from the contract, or that HealthNow had the requisite fraudulent intent.  Moreover, HealthNow contends that the Agreement contradicts the allegations that support APS's fraud claim.

To the contrary, APS asserts that it has sufficiently pled justifiable reliance and that HealthNow's argument only indicates that there are factual issues to be addressed in this regard. The gravamen of APS's fraud claim is that HealthNow knowingly or with reckless disregard provided false, inaccurate, and incomplete data to APS in order to induce APS to enter into a contractual relationship with HealthNow.  As a result, APS argues that it reasonably relied to its detriment on HealthNow's representations and would not have done so had it known the truth.

As a threshold matter, HealthNow relies on New York common law that holds that, when a fraud claim and breach of contract claim coexist in the same action, a plaintiff must either demonstrate "'(1) a legal duty separate and apart from the contractual duty to perform; (2) a

---

[11] *See also C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, No. 04 Civ. 9508, 2005 WL 2347925, *6 (S.D.N.Y. Sept. 26, 2005) (stating that the additional elements must be met when a fraud claim is "coexistent with an alleged breach of contract").

fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages.'" *See* HealthNow's Memorandum of Law at 16-17 (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)) (other citation omitted). In this case, however, APS has not alleged a breach of contract claim; therefore, it does not have to establish the additional elements required when a fraud claim is coexistent with a breach-of-contract claim. *See Eternity Global Master Fund*, 2002 WL 31426310, at *5. Thus, APS need only allege facts sufficient to satisfy the elements of common law fraud.[12]

Applying the elements of common law fraud to APS's allegations, the Court concludes that APS satisfies the false material representation element by alleging that HeathNow provided false "standard" provider fee schedules and falsely represented that the FHP program was "commercial" in nature. Regarding HealthNow's intent to defraud, APS alleges that HealthNow "needed to quickly replace its third party mental health and chemical dependency service provider, Integra, due to financial difficulties Integra was facing." *See* APS's Counterclaim at ¶ 7. HealthNow, therefore, provided this false information, APS alleges, to induce APS to enter into the contract. As to reliance, APS asserts that it relied on HealthNow's inaccurate information and

---

[12] Even assuming that APS did have to meet the additional elements of a fraud claim because of its contractual context, it has satisfied this burden. APS's factual allegations "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract," *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996), because the data that HealthNow provided to APS was "a misrepresentation regarding present facts, as opposed to one reflecting an intent to perform in the future, . . . ," *Solutia*, 385 F. Supp. 2d at 342 (citations omitted). Those present facts are HealthNow's representations regarding the "standard" provider fee schedules and its representation that the FHP program was "commercial" in nature, both of which, according to APS, were false.

-10-

provided "services at rates far below what it would have agreed to if HealthNow had presented it with accurate and reliable information."[13] *See id.* at ¶ 1. Finally, as a result of this reliance, APS alleges that it suffered damages in excess of millions of dollars.[14] *See id.* at ¶ 66. Accordingly, the Court finds that APS has stated sufficient facts to support its fraud counterclaim.

With respect to the Agreement's integration clause, HealthNow asserts that "all prior written or oral agreements are merged into the written agreement" which therefore "preclude[s]

---

[13] HealthNow argues that APS cannot prove justifiable reliance in relation to its fraud claim because APS knew about HealthNow's alleged misrepresentations two years prior to signing the Revised and Restated Agreement in June 2004. *See* HealthNow's Reply Memorandum of Law at 5. What APS knew and when it knew it are factual issues. Rule 12(b)(6) does not provide the parties with an opportunity to litigate such questions.

Moreover, to the extent that HealthNow relies on *Lazard Freres & Co. v. Protective Life Ins. Co.* for the proposition that sophisticated parties must protect their interests by inserting appropriate language into their contractual agreements, HealthNow misses one of the overarching issues in that case. In *Lazard Freres*, the Second Circuit articulated a major principle of New York case law, holding that, with respect to sophisticated parties to a contract, where the relying party could have easily accessed the relevant facts upon which it relied, its allegations of fraud will not be heard. Specifically, the court noted that,

> "[w]here the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable."

*Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997) (quoting *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989)) (other citations omitted). APS has consistently alleged that it could not verify the information that HealthNow provided to it in connection with the parties' agreement because that information was proprietary to HealthNow. Thus, because APS could not access the information in question, HealthNow's reliance on *Lazard Freres* is misplaced.

[14] APS alleges that it not only suffered damages in excess of millions of dollars but also suffered "punitive damages." *See* APS's Counterclaim at ¶ 66.

-11-

APS from relying on any alleged representations that were made at the time the parties negotiated the original IPA Agreement . . . ." *See* HealthNow's Memorandum of Law at 18 (citing Revised and Restated IPA Agreement §§ 12.8.1-8.2). APS, conversely, claims that the integration clause is ineffective against allegations of fraud.

New York courts prohibit the introduction of extrinsic evidence where a contract is fully integrated by a merger clause. *See Solutia*, 385 F. Supp. 2d at 340 (citing *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993)). "However, where the alleged misrepresentations supporting a claim of fraud arise from facts within the 'peculiar knowledge' of a party, even a specific disclaimer as to reliance on those representations does not bar a fraud claim." *Id.* (citing *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998)) (other citations omitted); *see also Yurish v. Sportini*, 123 A.D.2d 760, 761-62 (2d Dep't 1986) ("[T]his court has repeatedly noted that allegedly fraudulent [parties] may not invoke even specific disclaimer clauses in order to preclude evidence of oral misrepresentations if the facts allegedly misrepresented are peculiarly within [that party's] knowledge." (internal quotation omitted)).

As previously noted, APS alleges that HealthNow had a proprietary interest in the information that it provided to APS; therefore, APS had to rely on that data because it had no other means of obtaining the same. Since APS alleges that it relied on HealthNow's representations concerning facts within HealthNow's peculiar knowledge, the Revised Agreement's integration clause does not preclude APS's fraud counterclaim based on

representations extraneous to the contract.[15] *Cf., e.g., Solutia*, 385 F. Supp. 2d at 340 (holding that the plaintiff can introduce extrinsic evidence notwithstanding a merger clause where the "alleged misrepresentations in this action concern the capability of proprietary technology, which is necessarily in the peculiar knowledge of its owner" (citation omitted)).

Accordingly, the Court denies HealthNow's motion to dismiss APS's fraud counterclaim to the extent that HealthNow bases its motion upon its argument that APS failed to allege the elements of fraud.

### *2. Particularity Requirements of Rule 9(b)*

Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must plead fraud with particularity, which requires it to "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd.*, 375 F.3d at 187 (quoting *Harsco*, 91 F.3d at 347). Moreover, the complaint must be particular enough to satisfy Rule 9(b)'s three objectives: "(1) to provide a defendant with fair notice of the claims against it; (2) to protect a defendant from harm to its

---

[15] HealthNow asserts that APS ignores the "most important factor that bears directly on the viability of [APS's] Counterclaims: the sophistication of the parties." *See* HealthNow's Reply Memorandum of Law at 1. HealthNow correctly notes the importance of the sophisticated nature of the parties litigating reliance issues. However, the law in this Circuit holds that, "[a]lthough sophisticated parties can normally verify each other's representations or bargain for specific contractual warranties, the peculiar knowledge exception applies if 'a party would face high costs in determining the truth or falsity' of representations." *Solutia,* 385 F. Supp. 2d at 340 (citing *Warner Theatre*, 149 F.3d at 136) (other citation omitted). Since APS alleges that this information was proprietary to HealthNow and therefore unattainable through other means, APS's counterclaim properly falls within the "peculiar knowledge" exception to both fraud and negligent misrepresentation claims, *see id.* at 340-41, which trumps judicial concerns about interfering with voluntary transactions among "sophisticated parties." *See id.* at 340.

reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits." *Doehla,* 1999 WL 566311 at *17 (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Finally, although the rule does not require a plaintiff to allege scienter specifically, "it does require plaintiff to plead a factual basis which gives rise to a strong inference of fraudulent intent." *Id.* (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

HealthNow argues that APS has no factual basis to support the conclusion that it justifiably relied on HealthNow's alleged misrepresentations. Moreover, HealthNow asserts that this is particularly true considering that APS entered into the Revised and Restated Agreement in June 2004, "long after the alleged misrepresentations were purportedly made." *See* HealthNow's Memorandum of Law at 20. APS, however, contends that it pled its fraud claim with the particularity that Rule 9(b) requires. Specifically, APS alleges that Nora McGuire, Senior Vice President of Marketing & Business Development for HealthNow, Christian Miller, Corporate Director of Contractual Benefits for HealthNow, and HealthNow provided "APS in the course of the parties' negotiations" with "false and incomplete" information. *See* APS's Counterclaim at ¶ 60. In particular, this false information included the standard nature of the provider fee schedules, the commercial nature of the FHP program, and false representations about transferring the Indemnity/PPO members to APS.[16] APS also alleges that Ms. McGuire, Mr. Miller, and HealthNow knew that the data and representations that they supplied to APS were false; and that,

---

[16] APS alleges that HealthNow promised that it would enroll an additional 288,000 covered members under PPO/Indemnity plans with APS by September 2002. Based on this representation, APS alleges that it applied a lower rate ($.61/pmpm rather than $.71/pmpm ) in exchange for the additional business. HealthNow never enrolled these additional members, and this understanding was never memorialized in the parties' written contract.

-14-

because that information was proprietary to HealthNow, "McGuire knew or should have known that APS was going to rely on the accuracy and comprehensiveness of the data . . . ."[17] *See* APS's Counterclaim at ¶¶ 8, 66.

As previously stated, Rule 9(b) requires the plaintiff to (1) detail the fraudulent representations, (2) identify the speaker, (3) identify when the representations were made, and (4) explain why the representations are fraudulent. *See Eternity Global Master Fund Ltd.,* 375 F.3d at 187 (quotation omitted). APS's counterclaim details the representations that HealthNow made with respect to the information upon which APS relied, such as the standard Integra fee schedules and the representation that it would steer business towards APS if it would lower its administrative services fees. APS identifies the speakers, Ms. McGuire and Mr. Miller, "who were [both] in a position to know, and did know the contents and nature of information being tendered to APS." *See* APS's Counterclaim at ¶ 10. APS specifies when these representations were made, on August 24, 2001, when APS received a diskette of data, which APS used to form the basis for its price proposal to HealthNow, and in subsequent negotiations in late summer 2001. APS explains that these representations were fraudulent because, among other things, HealthNow

---

[17] APS also argues that the detailed facts in its memorandum of law in opposition to HealthNow's motion to dismiss establish that "APS made numerous direct requests for information that was peculiarly within HealthNow's knowledge, and that APS utilized the information that it received from HealthNow to respond to HealthNow's RFP and then refine its price proposal." *See* APS's Memorandum of Law in Opposition to HealthNow's Motion to Dismiss at 23. The Court has not considered APS's memorandum of law because, as a threshold matter, "[t]he case law interpreting Rule 9(b) requires the *complaint* to specify what is considered to be fraudulent." *Rouse v. Rouse*, No. 89-CV-597, 1990 WL 160194, *5 (N.D.N.Y. Oct. 17, 1990) (footnote omitted). This is "[b]ecause Rule 9(b) serves to protect against reputational harm[;] [thus], it is the complaint (and/or its exhibits) which must state with particularity the alleged fraudulent acts." *Id.* at *5 n.3 (citing *Cosmas v. Hassett*, 886 F.2d at 11). In accord with this rationale, "[t]he reader of a complaint should be able to review the alleged fraudulent statements without having to resort to other documents or submissions." *Id.*

provided APS with "standard" providers' fees which were actually the exception rather than the norm. These factual allegations are sufficient to pass muster under Rule 9(b) if they give "'rise to a strong inference of fraudulent intent.'" *Aetna Cas. & Surety Co. v. Aneiro Concrete Co., Inc.*, 404 F.3d 566, 579 (2d Cir. 2005) (quotation omitted). "This may be accomplished 'through allegations of a motive to deceive and access to accurate information.'" *Id.* (quotation omitted).

As to access to accurate information, HealthNow has a proprietary interest in the information and, as APS alleges, Ms. McGuire and Mr. Miller were in a position to know the content and nature of the information that they provided. As to a motive to deceive, APS alleges that HealthNow provided false information to induce APS to enter into a contract with it because it "found itself in a position where it needed to quickly replace its third party mental health and chemical dependency service provider, Integra, due to financial difficulties Integra was facing." *See* APS's Counterclaim at ¶ 7. Accepting these allegations as true, a reasonable inference can be drawn that HealthNow's need to replace its departing mental health provider quickly contributed to its need to induce APS to enter into a contract with it. If APS is able to prove these allegations, they would establish HealthNow's motive to provide false information, a motive Ms. McGuire and Mr. Miller would share as HealthNow employees. This information could, therefore, permit an inference that HealthNow, Ms. McGuire, and Mr. Miller acted with intent to defraud.

Accordingly, the Court finds that APS has sufficiently pled the circumstances of the fraud with the specificity that Rule 9(b) requires. Moreover, the facts as alleged in the counterclaim certainly "provide [HealthNow] with fair notice of the claims against it." *Doehla,* 1999 WL 566311, at *9 (citations omitted).

**D.     Promissory Estoppel**

To establish a promissory estoppel claim under New York law, a plaintiff must allege "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) (citations omitted).[18]

HealthNow argues that, because it had a valid enforceable contract with APS, the Court should dismiss APS's promissory estoppel counterclaim. Alternatively, HealthNow claims that APS cannot allege reasonable reliance. HealthNow also argues that the Revised Agreement's integration clause precludes APS's reliance on any promises made prior to its execution.

APS, conversely, claims that it has alleged a valid claim for promissory estoppel and that HealthNow's first contention is wrong because it incorrectly assumes that the backdated Revised Agreement was intended to be a final accord. Moreover, APS argues that HealthNow promised to transfer business its way in exchange for reduced administrative fees and that this promise was not in writing and was, therefore, outside the written agreement's scope.

As to the first element of promissory estoppel, APS's counterclaim alleges that

---

[18] Although HealthNow relies on authority that supports a limited view of promissory estoppel's application, the Second Circuit has not adopted this position. In *Cyberchron*, the Second Circuit rejected the argument that promissory estoppel only applied in two situations: (1) as a substitute for consideration or (2) as a bar to the assertion of the Statute of Frauds. *See Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 45 (2d Cir. 1995). After reviewing New York case law, the court determined that New York's promissory estoppel rule applied where its elements were met: "[1] a clear and unambiguous promise, [2] a reasonable and foreseeable reliance by the party to whom the promise is made, and [3] an injury sustained by the party asserting the estoppel by reason of the reliance.'" *Id.* at 44 (quotation and other citations omitted). The court also noted that "an unconscionable injury is sometimes required to fulfill the third requirement" and that "some courts will apply the doctrine only when enforcement is necessary to avoid injustice." *Id.* (citations omitted).

-17-

"HealthNow unambiguously promised APS that it would enroll 288,000 PPO/Indemnity members with APS by September 2002 if APS charged only $.61/pmpm rather than $.71/pmpm . . . ." *See* APS's Counterclaim at ¶¶ 68-69. Regarding reasonable reliance, APS alleges that it agreed to the $.61/pmpm price for administrative services because "those additional members would provide significant economies of scale for APS." *See id.* HealthNow, however, never transferred those additional members to APS by September 2002. Finally, as to unconscionable injury, APS alleges that it "has been damaged in an amount to be determined at trial as a result of HealthNow's breach of promise." *See id.* at ¶ 71.

Although at first glance these allegations might not seem to rise to the level of "unconscionable injury," the District Court for the Western District of New York has noted that, when determining the unconscionability of injury, "[w]hile one may question whether the sort of injury [asserted here] can be considered unconscionable" such an inquiry "'call[s] for a qualitative and quantitative examination of facts that cannot be well-addressed in the pleading stage of a lawsuit.'" *Clarence Beverage, Inc. v. BRL Hardy (USA) Inc.*, No. 99-CV-0256E, 2000 WL 210205, *3 (W.D.N.Y. Feb. 8, 2000) (quotation omitted). In essence, therefore, APS has sufficiently pled all three elements of its promissory estoppel counterclaim; and, therefore, the Court denies HealthNow's motion to dismiss on this basis.

As to the integration clause in the parties' Agreement (§ 12.8), at least one New York court has held that where a "merger clause is of a very general nature and does not contradict the allegations herein," a party is not precluded from raising a promissory estoppel claim. *Urban Holding Corp. v. Haberman*, 162 A.D.2d 230, 231 (1st Dep't 1990) (citation omitted). Other authority, however, holds that, where a merger clause is plainly intended to apply to the whole

agreement and its language is comprehensive, there can be no reasonable reliance on representations made outside the contract. *See Kleinberg v. Radian Group, Inc.*, No. 01 Civ. 9295, 2002 WL 31422884, *10 (S.D.N.Y. Oct. 29, 2002) (distinguishing *Haberman* and citing *D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy*, No. 98 Civ. 5847, 1999 WL 58916, *4 n.5 (S.D.N.Y. Feb. 8, 1999)).

HealthNow asserts that the integration clause bars APS's promissory estoppel counterclaim. APS argues that, because HealthNow made its representations regarding transferring additional members for the purpose of fraudulently inducing APS to enter the Agreement at a lower administrative fee, as well as the integration clause's silence on this issue, the clause is too general to bar APS's promissory estoppel claim.

APS is correct that its allegations do not contradict the Agreement because it is silent on HealthNow's alleged agreement to transfer additional members to APS; thus, the Court denies HealthNow's motion to dismiss APS's promissory estoppel counterclaim.

## IV. CONCLUSION

After carefully considering the record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that HealthNow's motion to dismiss APS's counterclaims for (1) negligent misrepresentation, (2) fraud, and (3) promissory estoppel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is **DENIED**.

**IT IS SO ORDERED.**

**Dated:** March 10, 2006
      Syracuse, New York

*/s/ Frederick J. Scullin, Jr.*
Frederick J. Scullin, Jr.
Chief United States District Court Judge